IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| vs. | ) | No. 05 CR 708 |
| | ) | |
| ADEWUNMI ARE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Adewunmi Are was charged with illegal reentry into the United States, in violation of 8 U.S.C. § 1326(a) and (b)(2). He now moves under FED. RULE. CRIM. P. 12(b)(2) to dismiss the indictment, arguing that the statute of limitations bars the government's prosecution. For the following reasons, defendant's motion is granted.

Prior to addressing the parties' positions on the statute of limitations, a review of the relevant chronological history is necessary. On or about February 24, 1995, the District Court for the Eastern District of New York sentenced defendant to 36 months imprisonment for conspiracy to import a controlled substance. After incarceration, defendant was ordered deported, and on March 26, 1996, defendant was removed from the United States to his native Nigeria. On May 9, 1998, defendant was detained in New York after unsuccessfully attempting to enter the United States. The next day he was removed to Nigeria after expedited removal proceedings. Based on this failed reentry attempt, the probation office for the Eastern District of New York filed a Violation of Supervised Release Report on December 21, 1998. A warrant for defendant's arrest was then issued on December 29, 1998. The warrant identified defendant and listed his last known address as 4640 North Sheridan Road, Apt.

#509, Chicago, Illinois 60604.

On September 4, 1998, defendant returned to the United States but did not do so through an official port of entry using his real name. Defendant took up residence with his wife, Vivianne Adelagun, at the address listed in the December 29, 1998, arrest warrant. Meanwhile, nearly a year prior to this surreptitious return, the government received a tip from a confidential informant that the defendant was living in Chicago with his wife. A report dated September 25, 1997, identifies Adelagun by name.

The Immigration and Naturalization Service (INS) opened an investigation into defendant on October 15, 1998. Defendant attaches to his motion an INS document titled "Investigation Preliminary Worksheet" that identifies him by name and file number, the location as "CHI," places the case in progress, and assigns the case to a specific INS agent. The worksheet also identifies "Prior Deport." and "Reinstatement Case" as "additional information required." Around February 2001, defendant, Adelagun, and their child, moved from their apartment in Chicago to a home in Hazel Crest, Illinois.

On September 23, 2003, Chicago police arrested defendant, who posted bond after providing a false name. Defendant's true identity and the outstanding warrant were later discovered after his fingerprints were processed. An INS agent in the Eastern District of New York located defendant at his address in Hazel Crest, and on December 10, 2004, requested that he be arrested. United States marshals executed the December 29, 1998, warrant on June 20, 2005, and arrested defendant. Magistrate Judge Brown then ordered defendant removed to the Eastern District of New York (*see* 05-CR-570, docket no. 2, June 20, 2005). After defendant was removed, government officials in the Northern District of Illinois began investigating defendant's presence in the United States. An arrest warrant and complaint

were filed on August 10, 2005. And, on September 1, 2005, a grand jury returned an indictment on charges of illegal reentry.

A violation of section 1326 occurs when an alien who has been previously removed "enters, attempts to enter, or is at any time found in, the United States," subject to certain exceptions set forth in section 1326(a)(2), and not applicable here. There are thus three ways to commit illegal reentry. See United States v. Herrera-Ordones, 190 F.3d 504, 509 (7th Cir. 1999). Because defendant surreptitiously entered the United States, the offense occurred when he was "found." See United States v. Clarke, 312 F.3d 1343, 1346 (11th Cir. 2002). Section 1326 offenses are subject to the five-year limitations period set forth in 18 U.S.C. § 3282, and the limitations period begins to run when the offense is complete. United States v. Gomez, 38 F.3d 1031, 1034 (8th Cir. 1994); United States v. Santana-Castellano, 74 F.3d 593, 597 (5th Cir. 1996); United States v. Ortiz-Hernandez, 427 F.3d 567, 579 (9th Cir. 2005). Defendant's offense was complete when he was "found in" the United States. Clarke, 312 F.3d at 1348; United States v. Lennon, 372 F.3d 535, 541 (3d Cir. 2004) ("the offense of being 'found in' the United States illegally is 'committed' when the alien comes to the affirmative attention of INS officials.").

In Herrera-Ordones the Seventh Circuit joined the majority position and held that an alien was found for section 1326 purposes when he was discovered by the government. Id. at 190 F.3d at 510. The court further noted that discovery has two elements. The INS must discover the physical presence of the alien, and it must ascertain that because of the alien's identity (as an illegal alien) and status (as one who illegally reentered the country), that the presence is illegal. Id.

Defendant argues that he was "found in" the United States on October 16, 1998, when the INS put his case "in progress" and noted his immigration status. At that time, defendant

urges, the government had access to his address and prior immigration status and if it did not know that he had illegally reentered the country, it could have ascertained that information through a reasonably diligent investigation. The government counters, and argues that the earliest it found the defendant was in late 2003 or early 2004, after the United States marshals determined that defendant was residing with his wife in Hazel Crest. Even if defendant was discovered in 1998, the government contends that his conduct should toll the limitations period.

The October 16, 1998, investigation worksheet indicates, in the least, that the government noted defendant's physical presence in the United States. This document indicates that the INS was reinstating its case against defendant, and it includes specific notations of a prior deportation. But this document also appears to merely commemorate the initiation of a case. According to the information presented to us, the most relevant piece of information that preceded the investigation worksheet was the confidential informant's tip that defendant was in Chicago with his wife, dated September 25, 1997. In contrast, by late 2004, the government had concrete knowledge of defendant's presence in the United States as a result of his fingerprint match, and his address in Hazel Crest. We do not think that the investigation worksheet shows that the government had actually discovered defendant. Nevertheless, we believe that the limitations period began at an earlier date than that proposed by the government, because at the earlier time the "immigration authorities could have, through the exercise of diligence typical of law enforcement authorities, discovered the violation." Gomez, 38 F.3d at 1037.

In Herrera-Ordones, the defendant was convicted of felony battery in state court in the Northern District of Indiana, and was subsequently transferred to a facility in the Southern

District of Indiana. *Id.* at 190 F.3d at 507. Prior to his transfer, the defendant gave authorities a false name. The government had reports, based on the defendant's fingerprints, indicating that defendant had a criminal history, but not disclosing a prior deportation. After his transfer, defendant admitted that he had previously been deported. Just over two weeks passed between the state court conviction and defendant's admission of prior deportation. The government then brought section 1326 charges in the Southern District of Indiana, and defendant argued that venue was proper in the Northern District. He argued that INS officials had constructive knowledge of his identity because they could have determined who he was while he was still in the Northern District. The court rejected that argument and concluded that the government was reasonably diligent, and that because defendant concealed his identity by providing aliases it was not until he finally revealed his true name and admitted prior deportation that the government could have known his true identity. *Id.* at 511.

Herrera-Ordones is significant because it shows the court applying a constructive knowledge standard in a section 1326 case. Even though the challenge in Herrera-Ordones was for improper venue, the central issue was when the defendant was "found," or when the government knew or should have known that the defendant's presence in the United States was illegal. The case is also important because it presents a crucial distinction: the defendant in Herrera-Ordones was responsible for the government's minor delay in determining his identity. This scenario, where an alien stonewalls the government or sends it on snipe-hunting expeditions is a common one. *See* United States v. DeLeon, 2006 U.S. App. LEXIS 8417 (1st Cir. 2006); United States v. Morgan, 380 F.3d 698 (2d Cir. 2004); United States v. Rivera-Ventura, 72 F.3d 277, 284 (2d Cir. 1995); Clarke, *supra*; United States v. Mercedes, 287 F.3d 47, 55 (2d Cir. 2002); United States v. Calderon, 85 F. Supp. 2d 319 (S.D.N.Y. 2000). Courts

are unwilling to reward an alien's deceit and rightfully toll the limitations period when a delay is attributable to the alien's falsehoods. But this is not that case. Even though the defendant surreptitiously entered the United States, after doing so he did not provide any false information that thwarted the government's investigation.[1] Rather, the government had access to all the information required to discover defendant and his illegal presence.

Significantly, the government had access to the defendant's home address, which was noted in the December 21, 1998, violation notice, the December 29, 1998, arrest warrant, and a 1994 pre-sentence investigation report. Even though the pre-sentence report was issued four years prior to the reinstatement of the case in 1998, the information contained therein still provided a starting point that was not otherwise contradicted. Moreover, the accuracy of defendant's address in the pre-sentence report was confirmed by the violation notice and warrant, which were issued only two months after the case was placed in progress. Similarly, Adelagun's identity as defendant's wife was confirmed by the confidential informant on September 25, 1997, prior to the reinstatement of the case. To sum, the government had constructive knowledge of defendant's physical presence, identity as an illegal alien, and status as having a prior deportation. All of the information necessary to bring a section 1326 prosecution was in the government's possession. *Compare* Gomez, 38 F.3d at 1038 *with* Clarke, 1343 F.3d at 1347-48.

Next we must determine when knowledge of defendant's illegal presence should be attributed to the government. *See* Gomez, 38 F.3d at 1031. In Gomez, on May 3, 1988, the

---

[1] We do acknowledge that defendant provided a false name when he was arrested by Chicago police on September 23, 2003. The government does not suggest that this lie thwarted its investigation. Moreover, and as discussed above, we believe that the critical period when the government should have discovered defendant anteceded defendant's 2003 arrest.

defendant furnished a false name and other false information to an INS Legalization Office, but he also provided fingerprints. On May 7, 1993, five years and four days later, the government charged the defendant with violating section 1326. The court concluded that the government could have used the fingerprints to determine the defendant's true identity, but held that because fingerprint processing could take up to 60 days, the earliest date on which the government should have discovered the defendant's identity was within the five-year limitation period.

Here, the indictment was filed on September 1, 2005. Accordingly, for the limitations period to bar the prosecution, the government should have discovered defendant's illegal presence before September 1, 2000. As noted above, defendant posits that the government should have found him in the United States on October 16, 1998. However, the violation report and arrest warrant from the Eastern District of New York are critical to the government's discovery of defendant for two reasons. First, they note defendant's address on Sheridan Road; second, the documents would have reasonably led to the pre-sentence reports, which mention the Sheridan Road address and Adelagun. Reference to Adelagun is significant because it relates to the confidential informant report and memorandum of investigation already in the possession of INS officials. Taking into consideration the documents issued after the investigation worksheet, the proper date on which to start the clock is December 28, 1998.

Neither party indicates how much time the government should have taken to discover defendant, in light of the information in its possession. This is not a situation with set turn-around times, similar to the fingerprint analysis in <u>Gomez</u>. However, we do not think that it would take longer than 20 months to connect the dots that the government had in front of it. Just over one year passed between defendant's 2003 arrest and the issuance of an arrest

request that included defendant's address in Hazel Crest. In 1998, the government already had defendant's address. When the government has sufficient opportunities to discover an offense, "its failure to do so is no basis to overcome the substantial policy favoring repose." United States v. DiSantillo, 615 F.2d 128, 136 (3d Cir. 1980). Because a reasonable investigation would have discovered defendant prior to September 1, 2000, the indictment was filed five years after the section 1326 offense was committed, and the prosecution is therefore time-barred.

Even with the limitations period commencing at an earlier date, the government argues that the period should be tolled after defendant moved to Hazel Crest in 2001. We do not agree. For limitations purposes a section 1326 offense occurs on the date of discovery. *See* United States v. Lopez-Flores, 275 F.3d 661, 663 (7th Cir. 2001) (discussing the date of discovery in terms of culpability as distinct from the running of the statute of limitations). A defendant is not "found," so long as he remains "permanently and continuously" at a specific address, as the government contends. Rather, after a defendant has been discovered, the offense has been committed for limitations purposes. While we did not identify a concrete discovery date above, we have determined that it is before September 1, 2000. It is true that a defendant's conduct, such as flight, may toll the limitations period. But under these circumstances, moving to the suburbs is not criminal.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the prosecution is granted. Obviously, the government can deport defendant and he would face renewed charges if he returned. But the time to prosecute him for the prior entry has expired.

                                                                                _____
                                                                                              **JAMES B. MORAN**
                                                                                Senior Judge, U. S. District Court

_April 21_, 2006.